## Painter's Lateral Railroad.

*Lateral railroads—Appeals—Bond—Acts of May 5, 1832, P. L. 501, March 28, 1840, P. L. 196, April 20, 1858, P. L. 361, and February 17, 1871, P. L. 56.*

The acts of assembly relating to the condemnation of land for lateral railroads must be strictly complied with. A fundamental prerequisite in a proceeding for a lateral railroad is a necessity for the road, and this necessity must be finally determined before the petitioner is authorized to enter upon the premises of the landowner.

Under the Act of February 17, 1871, P. L. 56, the questions both of the

necessity of a lateral railroad, and of the damages for the taking of land are subject to review on appeal, and the petitioner for the road has no authority, after the question of necessity has been decided in his favor by the viewers and the court below, to enter a bond, and to proceed with the construction of the road until the appeal has been determined. In this respect the Act of February 17, 1871, P. L. 56, repealed the Act of April 20, 1858, P. L. 361.

Argued Jan. 28, 1901. Appeal, No. 72, Oct. T., 1900, by the H. C. Frick Coke Company, from order of C. P. Westmoreland Co., Nov. T., 1899, No. 90, approving bond for a lateral railroad in the matter of the petition of Morris L. Painter, for a lateral railroad. Before McCollum, C. J., Fell, Brown, Mestrezat and Potter, JJ. Reversed.

Petition for a lateral railroad.

The facts are fully stated in the opinion of the Supreme Court.

*Error assigned* was the order approving bond in the sum of $5,000 entered by Morris L. Painter in favor of the H. C. Frick Company.

*James S. Moorhead*, with him *John B. Head*, for appellant.— The act of 1858 repealed, pro tanto, the act of 1832, as amended by the act of 1840, because it furnished a new mode of procedure different from and inconsistent with the old act: Horner & Roberts's Lateral Railroad, 37 Pa. 333.

That the act of 1871 for precisely the same reason repeals the act of 1858 is equally clear.

Acts which grant a right conditioned on different things are clearly inconsistent. It is this inconsistency which operates as a repeal: Gwinner v. Lehigh & Del. Gap Railroad Co., 55 Pa. 126; In re Martz's Election, 110 Pa. 502; Fort Pitt Bldg. & Loan Assn. v. Model Plan Bldg. & Loan Assn., 159 Pa. 308.

*Vin E. Williams*, with him *A. M. Sloan* and *W. A. Griffith*, for appellees, cited: Carbon Limestone Company's App., 188 Pa. 509; Lance's App., 55 Pa. 16.

Opinion by Mr. Justice Mestrezat, February 25, 1901:

Morris L. Painter, being the owner of certain coal lands in

Westmoreland county, presented his petition to the court of common pleas of that county on September 11, 1899, praying the court to appoint viewers to view the route of a proposed lateral railroad extending from said coal lands to the South West Pennsylvania Railroad, and passing over certain intervening lands of the H. C. Frick Coke Company. The viewers were appointed and on November 13, 1899, reported that "the said lateral railroad as well as the point of connection, in the said petition and order mentioned, are necessary and useful for private purposes," and awarded $730 damages to the H. C. Frick Coke Company. The court on the same day ordered the report to be approved and confirmed absolutely unless exceptions thereto were filed within ten days, or an appeal therefrom was perfected within twenty days, and that the road be adjudged necessary for private purposes. On November 20, 1899, the H. C. Frick Coke Company appealed from the report of viewers to the court of common pleas. An issue was framed sec. reg. to try this appeal, in which the coke company was made plaintiff and Painter, the petitioner for the road, the defendant. The issue was tried in the court below, and on March 1, 1900, the jury returned a verdict that the railroad was necessary over the proposed route, and awarded the plaintiff $2,200 damages. Judgment was entered on the verdict on March 31, 1900, from which the plaintiff appealed to this court, and which judgment has been affirmed by an opinion filed herewith. The appeal became a supersedeas by order of the court below on the appellant giving the bond required by the Act of May 19, 1897, P. L. 67, and hence the question raised here is of no practical importance to the parties to this litigation. As a precedent, however, it becomes important that the proper practice in such cases be determined.

On March 27, 1900, Painter presented his petition to the court below and obtained a rule on the H. C. Frick Coke Company to show cause why his bond in the sum of $5,000 with sureties, should not be approved. The bond recited the fact that "the said lateral railroad has been duly determined to be necessary for public and private use, and the petitioner desires to proceed in the opening, constructing, completing and using said railroad," and was conditioned that the petitioner should pay to the H. C. Frick Coke Company "such damages as shall be as-

sessed under the provisions of the acts of assembly of said commonwealth in such cases made and provided." On March 31, 1900, the court entered a decree approving the bond, to which the H. C. Frick Coke Company excepted, and from that decree this appeal was taken.

The only error assigned is the action of the court in approving the bond of the petitioner for the road, and thus enabling him to proceed with its construction during the pendency in this court of the appeal by the landowner, and prior to the final determination of the necessity for the road. The learned judge of the court below, while conceding that a reversal of the judgment in favor of the necessity of the road might result in the finding by another jury that there is no such necessity, yet holds that such possible condition of the record is for the consideration of the petitioner rather than for the court, and that it is the right of the petitioner under the statute to have his bond approved. The position thus assumed by the court requires a brief review of some of the legislation in the state relative to lateral railroads.

The Act of May 5, 1832, P. L. 501, Purd. 1816, authorized the landowner desiring a lateral railroad, to survey such route over intervening lands as he might think proper to adopt; and required the court, on presentation of a petition setting forth the facts, to appoint six viewers " who shall view the said marked and proposed route for a railroad . . . . and if they, or any four of them shall deem the same necessary and useful for public or private purposes, they shall report in writing . . . . what damages will be sustained by the owner of the said intervening land, by the opening, constructing, completing and using the said railroad, and the report . . . . if not appealed from, be liable to be confirmed or rejected by the said court." An appeal by both parties to the court of common pleas is there provided for, and the " issue shall be placed first on the trial list of the next regular term of the said court, and be there tried and determined by the court and jury." The statute provided that the judgment entered on the verdict should be final and conclusive. After a report of viewers or a verdict in his favor on the necessity of the road, the petitioner was required to pay or tender the damages, before he could commence the construction of his road. It thus appears that under this act

the necessity for the road and, if it be found to exist, the amount of damages, were for the determination of the viewers and, on appeal, for the final determination of the court and jury. In cases of appeal from the report of viewers it is therefore apparent, that the necessity for the road was not finally determined until a judgment had been entered on the verdict of the jury.

The act of 1832, as we have seen, denied an appeal from the judgment of the court of common pleas; but by the Act of March 28, 1840, P. L. 196, Purd. 1819, it was provided "that so much of the act, to which this is a supplement, as prohibits a writ of error or appeal shall be, and the same is hereby repealed." This act therefore repealed so much of the act of 1832 as prevented the parties from taking an appeal from the judgment of the court on the question of the necessity of the road as well as on the amount of damages sustained by its construction.

The Act of April 20, 1858, P. L. 361, Purd. 1817, is a supplement to the act of 1832. It required the viewers to determine the necessity of the road and the damages sustained by its construction. It then provided that "when in the opinion of the court the road is necessary for public or private use, it shall be lawful for the petitioner or petitioners, upon giving bond, with one or more sureties, to be filed with the petition, and to be approved by the court to which such petition shall have been presented, conditioned for the payment of such damages as shall be assessed under the provisions of the acts to which this is a supplement, to proceed in the opening, constructing, completing and using the said railroad with one or more tracks as prayed for in said petition." The authority given by this act, it will be observed, requires the viewers to determine the necessity for the road in the first instance. But no appeal from their action is given by the statute. In place of it and as a protection to the landowner, the court was required to supplement the finding of the viewers by its approval of the necessity for the road. When the necessity was thus ascertained, it was final, and the subsequent proceedings related exclusively to a determination of the damages. This was the only question left open for adjudication; and in order to prevent a delay to the petitioner in the construction and the use

of his road, which would otherwise occur, the act permitted him to secure to the landowner, by filing a proper bond, the damages which might be subsequently assessed for the injury sustained. There could be no reasonable objection to such proceeding, when the necessity for the road had been finally determined.

The next legislation on this subject affecting the question at issue, was the Act of February 17, 1871, P. L. 46, Purd. 1821, entitled "An act supplementary to the acts relating to lateral railroads." It provides that "in all proceedings now pending, or which may hereafter be instituted, to procure the right to construct lateral railroads . . . . the appeal to court from the report of the viewers shall extend not only to the assessment of damages, but to the question of the necessity of the proposed lateral railroad. . . . This act therefore required the court and jury on an appeal from the report of viewers to determine the necessity for the proposed road as well as to assess the damages. This placed the course of procedure in such cases as it was under the prior acts of 1832 and 1840, and made again effective the provisions of these acts. The issue under the act of 1871 embraces both questions, and is to be tried by the court and jury. Their decision, however, is not final on either question, but subject to the action of this court on appeal. It is therefore obvious that where an appeal is taken there can be no final determination of the necessity for the road, and the consequent right of the petitioner to enter and construct it upon the proposed route, until it has been so determined by the judgment of this court.

This is a statutory proceeding to enforce the right of eminent domain. Before the owner of land can be deprived of his property, the acts of assembly conferring the right on the petitioner should be strictly complied with. It is incumbent on the latter, when he seeks to enforce this privilege, that he be able to point to direct and absolute authority conferred by the legislature. A fundamental prerequisite in this proceeding is a necessity for the road, which must be finally determined before the petitioner is authorized to enter upon the premises of the landowner. The statute places this responsibility on the jury and the court of common pleas, and their action, on appeal, is subject to an affirmance by this court. When the ac-

tion of the proper tribunal has been finally taken and is favorable to the petitioner, he may then take the property of the landowner, by making compensation therefor as provided by law.

As we have seen, the act of 1858 when the necessity for the road had been determined by the court, permitted the petitioner to proceed to construct his road, on filing his bond, conditioned for the payment of such damages as should be assessed against him. This provision of the statute contemplated a delay in the assessment of the damages after a determination of the necessity for the road. But the act of 1871 requires both questions to be determined at the same time and by the same tribunal. There is, therefore, no necessity for the bond required by the act of 1858, as its very condition would require the payment of the damages forthwith. It follows that the act of 1858 is by necessary implication repealed by the act of 1871. This view of the case renders the legislation relative to lateral railroads harmonious; while the other view, entertained by the court below and contended for by the appellee, must necessarily produce the inconsistent results suggested by the learned trial judge.

In Carbon Limestone Company's Appeal, 188 Pa. 509, cited and relied upon by the appellee, the court appointed viewers, and approved the bond of the petitioner for the road before the viewers had made their report to the court. An appeal was taken and this court held that it was premature, and it was, therefore, quashed. In the course of the opinion, it was said that the approval of the bond was premature; but that it did no harm, as it could not authorize an entry on the land until the necessity for the road was settled. It was also said: "But under the lateral railroad acts the necessity is not determined by the petitioner but by the owners, with the approval of the court, or by the verdict of a jury, upon an appeal; and until this preliminary requisite has been established, no entry on the land is authorized." It is therefore apparent that the question involved in the case at bar was not raised or determined in the case cited.

It follows from what has been said that the court had no authority to approve the petitioner's bond; and therefore the decree of the court below is reversed.